UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| ILLINOIS FARMERS INSURANCE COMPANY, | ) ) ) | |
|---|---|---|
| Plaintiff, | ) ) | |
| v. | ) ) | CAUSE NO.: 4:14-CV-75-TLS |
| TJ OVERMAN, BRANDY OVERMAN, EULONDA LAGUIRE, Individually, and d/b/a LONIE's DAY CARE, | ) ) ) ) | |
| Defendants. | ) ) | |

**OPINION AND ORDER**

Eulonda LaGuire provided day care services in her home. She and her husband had a homeowner's insurance policy with Illinois Farmers Insurance Company when W.O., a child she was hired to provide day care services for, died in the home. W.O.'s parents, TJ and Brandy Overman, filed suit against LaGuire in state court. Farmers filed a Complaint for Declaratory Judgment in this Court, seeking a declaration that it has no duty to defend or indemnify LaGuire for the Overman's claims. This matter is before the Court on Illinois Farmers' Motion for Summary Judgment [ECF No. 18], TJ & Brandy Overman's Brief in Response [ECF No. 21], Illinois Farmers' Reply [ECF No. 22], and the accompanying exhibits.

The Plaintiff asserts that there is no insurance coverage under the terms of the policy for the Overman's claims against LaGuire because the injuries arose during the course of LaGuire's business pursuits. In response, the Overmans assert that the Plaintiff is estopped from relying on the written terms of the policy because the LaGuires' insurance agent made statements that caused the LaGuires to believe that their homeowner's policy would cover a claim arising from operation of the daycare. They submit that, because there is a genuine issue of material fact

regarding whether the LaGuires' reliance on the agent's statement was reasonable, the Court must deny the Plaintiff's Motion for Summary Judgment.

**STATEMENT OF FACTS**

**A.     The Policy**

From May 29, 2013, to May 29, 2014, Randall and Eulonda LaGuire held homeowner's insurance under Illinois Farmers policy number 091436-52-77 (the Policy) for their residence in Lafayette, Indiana. The Policy provided:

> We do not cover **bodily injury, property damage** or personal injury which:
>
> 1. arises from or during the course of **business** pursuits of an **insured**. But we do cover:
>
>    a. that part of a residence of yours which is rented or available for rent:
>
>    (1) on an occasional basis for sole use as a residence.
>    (2) to no more than two roomers or boarders for sole use as a residence.
>    (3) as an office, studio or private garage.
>
>    b. part-time services performed by an **insured** under age 21 who is a resident of your household. "Part-time" means no more than 20 hours a week.
>
> 2. results from the rendering or failure to render **business** or professional services.
>
> \* \* \*
>
> 4. results from the legal liability of any **insured** because of home care services provided to any **person** on a regular basis by or at the direction of:
>
>    a. any **insured**;
>    b. any employee of any **insured**;
>    c. any other **person** actually or apparently acting on behalf of any **insured**.

Regular basis means more than 20 hours per week.

This exclusion does not apply to:

    a.    home care services provided to the relatives of any **insured**;
    b.    occasional or part time home care services provided by any **insured** under 21 years of age.

(ECF No. 1-1 at 19.) The Policy defined a business as "any full or part-time trade, profession or occupation." (*Id.* 7.)

**B.**     **The Day Care**

Since 1986, Eulonda LaGuire has provided licensed day care services in her Lafayette home under the name Lonie's Day Care (the Day Care). Eulonda and Randall were both licensed by the State of Indiana to provide daycare services, although Randall was not involved in the day-to-day operations of the Day Care. Randall handled insurance and tax matters. Eulonda worked in the Day Care on a full-time basis.

TJ and Brandy Overman contracted with the Day Care to provide services to their children, L.O. and W.O. In January 2014, W.O. died while at the Day Care. A complaint is pending in Tippecanoe Superior Court on claims that Eulonda LaGuire d/b/a Lonie's Day Care is liable for W.O.'s death.

**C.**     **Procuring the Insurance**

Joe Hufford had been the LaGuires' insurance agent since about 2003. The LaGuires obtained all of their insurance through Hufford, including the homeowner's policy and three automobile policies. A number of years before W.O.'s death, Randall was at the Plaintiff's office

and learned that they did not offer business insurance. Randall asked Hufford what would happen if the LaGuires filed a claim arising out of the daycare being operated out of their home. Hufford's response, although not a definitive statement about coverage, led Randall to believe that Illinois Farmers would most likely cover the first daycare-related claim, but then terminate the LaGuires' homeowner's coverage. Randall relayed this information to Eulonda.

## ANALYSIS

**A.     Standard of Review**

Summary Judgment is appropriate when the record before the Court establishes that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the Court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. *Id.* at 255.

In deciding issues of insurance coverage, the Court must apply Indiana law for contract interpretation. *Allstate Ins. Co. v. Keca*, 368 F.3d 793, 796 (7th Cir. 2004) ("A federal court sitting in diversity has the obligation to apply the law of the state as it believes the highest court of the state would apply it if presented with the issue."); *State Farm Mut. Auto Ins. Co. v. Pate*, 275 F.3d 666, 669 (7th Cir. 2001) ("When the state Supreme Court has not decided the issue, the rulings of the state intermediate appellate courts must be accorded great weight, unless there are persuasive indications that the state's highest court would decide the case differently."). An

insurance contract "is subject to the same rules of interpretation as are other contracts." *Morris v. Econ. Fire & Cas. Co.*, 848 N.E.2d 663, 666 (Ind. 2006) (citing *USA Life One Ins. Co. of Ind. v. Nuckolls*, 682 N.E.2d 534, 537–38 (Ind. 1997)). As with other contracts, the interpretation of an insurance contract is a question of law. *Cinergy Corp. v. Associated Elec. & Gas Ins. Servs.*, 865 N.E.2d 571, 574 (Ind. 2007).

In reviewing policy terms, the court construes them "from the perspective of an ordinary policyholder of average intelligence." *Allgood v. Meridian Sec. Ins. Co.*, 836 N.E.2d 243, 246–47 (Ind. 2005) (quoting *Burkett v. Am. Family Ins. Grp.*, 737 N.E.2d 447, 452 (Ind. Ct. App. 2000)). If the contract language is clear and unambiguous, it should be given its plain and ordinary meaning. *Tate v. Secura Ins.*, 587 N.E.2d 665, 668 (Ind. 1992).

**B.     Estoppel**

There is no dispute that clear and unambiguous terms of the Policy excluded coverage for injuries arising from or during the course of business pursuits, such as the Day Care. Nevertheless, the Overmans argue that a reasonable jury could conclude that the LaGuires reasonably relied on statements from their agent regarding coverage, and that the Plaintiff is therefore precluded from asserting the plain language of the Policy to deny coverage. (See, e.g., Br. Resp. 6 (citing *Village Furniture, Inc. v. Associated Ins. Mgrs., Inc.*, 541 N.E.2d 306, 308 (Ind. Ct. App. 1989), for the proposition that "where an agent represents to an insured that the policy will insure against a hazard about which the insured is particularly concerned and the hazard materializes, the company will be estopped to plead the terms of the policy when the insured's reliance on the agent's representations was reasonable").)

5

The Overmans argue that it is undisputed that Randall believed, based on representations from Hufford, that a daycare-related claim would be covered under the policy, and that it is only unclear what the "basis for that belief" was. (Br. Resp. 13.) "On the one hand he states he believes he had *coverage* under the policy, while on the other hand he states that he believed that Illinois Farmers would *honor the claim as a matter of practice*." (*Id.* 13–14 (emphasis added).) The Defendants assert that this lack of clarity regarding the basis for Randall's belief is not problematic, at least at this stage of the proceedings:

> An issue of material fact "is not required to be resolved conclusively in favor of the party asserting its existence." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288 (1968)). Rather it is the conflict of evidence which gives rise to a question for the jury. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249 ("all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.").

(*Id.* 14.)

The Court does not agree with the Defendants' application of the cited legal principles. There is no "conflict of evidence" in this case, and no differing versions of the truth for a jury to decide. Randall states that he was aware that the Day Care did not have business insurance, but "was under the assumption that most likely Farmer's would cover the first issue and then cancel us." (Randall Dep. 6–7, ECF No. 21-2.) His assumption is based on a conversation he had with Hufford, his insurance agent. But the Court finds that this conversation is not sufficient, as a matter of law, to expand the scope of coverage and estop the Plaintiff from asserting that the business pursuits provision excludes coverage.

When asked to described what he said to Hufford, Randall testified:

The best that I can remember—the best I remembered, I would have said interested in

6

purchasing, you know, business insurance for a daycare and he said, if I remember right, they don't carry it. They don't—you know, I think he asked me how many kids you would be covering and they don't carry it. And I said, you know, well what if you had that many kids if there was an accident, *what would Farmer's do, how would that play out*, and he said they would most likely cover the first incident and then they would cancel you.

(*Id.* 19 (emphasis added).) Randall acknowledged more than once during his deposition that Hufford did not say anything "definitive" about coverage.

> Q. [Y]ou've said that [what Hufford relayed] wasn't a definitive you would be covered, correct?
>
> A. Yeah, I don't remember him saying that's the way it would be. But, you know, I put a lot of weight in what [an] agent thought. You know, I realize that's his opinion but he knows how things play out in the past and how this company works.
>
> Q. He wasn't making representations to you about what the insurance — or the insurance policy said, correct?
>
> A. No. Correct.
>
> Q. He was talking to you about claim handling, correct?
>
> A. Correct.

(*Id.* 23.) Randall was asked similar questions on redirect examination:

> Q. You don't recall whether there was a definitive statement from Mr. Hufford regarding whether a claim would be covered?
>
> A. The way I remember it, it was most likely this is the way it would play out.
>
> Q. What was your understanding when you left that conversation?
>
> A. My understanding was that if there was a claim most likely it would be covered.
>
> Q. Did you understand with that that you were taking some risk by not having additional coverage?

7

> A. Probably—probably somewhat but I felt more—more secure that we would be covered if something happened.
>
> Q. And that was based on what [Hufford] told you?
>
> A. Yes.
>
> \*\*\*
>
> Q. I think you said that you gave weight to what [Hufford] told you, is that correct?
>
> A. Yes.
>
> Q. Why did you give weight to what he told you?
>
> A. Because he was my agent. He knew what the company—how they functioned and have handled claims in the past.

(*Id.* 24.) Randall could not state when the conversation occurred, although it is undisputed that it was at least ten years before this litigation, and was not in connection with obtaining the Policy. (*Id.* 20.)

The Defendants' position—that there is an outcome determinative issue in dispute—does not take into account the applicable law on equitable estoppel. But "[w]hether a jury could reasonably find for either party . . . cannot be defined except by the criteria governing what evidence would enable the jury to find for either the plaintiff or the defendant." *Anderson*, 477 U.S. at 254; *id.* at 254–55 ("It makes no sense to say that a jury could reasonably find for either party without some benchmark as to what standards govern its deliberations and within what boundaries its ultimate decision must fall, and these standards and boundaries are in fact provided by the applicable evidentiary standards."). "Estoppel is an equitable doctrine designed to prohibit an injustice that would occur without its application." *Little v. Progressive Ins.*, 783 N.E.2d 307, 315 (Ind. Ct. App. 2003) (citing *Levin v. Levin*, 645 N.E.2d 601, 604 (Ind. 1994)). It

"is purely a defensive weapon." *Pepkowski v. Life of Ind. Ins. Co.*, 535 N.E.2d 1164, 1167 (Ind. 1989).[1] Under the concept of estoppel, "one's own acts or conduct will prevent one from claiming a right to the detriment of another party who was entitled to and did rely on one's conduct." *Little*, 783 N.E.2d at 315 (citing *Brown v. Branch*, 758 N.E.2d 48, 51–52 (Ind. 2001)). Application of the doctrine is appropriate where the conduct is "of a sufficient affirmative character to prevent inquiry or to elude investigation or to mislead and hinder." *Paramo v. Edwards*, 563 N.E.2d 595, 599 (Ind. 1990).

Even when the facts are taken in a light most favorable to the Overmans, the doctrine of equitable estoppel is not appropriate. Hufford's statements were not of sufficient affirmative character to prevent inquiry about coverage for the Day Care. Hufford did not conceal a material fact from Randall, who was aware that he had a homeowner's policy, not business insurance. Hufford's statements might have prompted the LaGuires to file a claim for a daycare-related accident, despite not having paid any premiums for business coverage, and hope the Plaintiff would cover it based on practices that did not require strict adherence to policy terms. However, the circumstances do not suggest that Hufford's comments prevented the LaGuires from making further inquiry into purchasing business insurance. Randall understood that Hufford's comments

---

[1] Promissory estoppel and equitable estoppel are distinct. The former is a cause of action (a sword) and the latter is a defensive doctrine (a shield) used to bar the opposing party from asserting a claim or defense. *Peters v. Gilead Scis., Inc.*, 533 F.3d 594, 598 n.5 (7th Cir. 2008) (quotation marks and citation omitted). A promissory-estoppel cause of action permits the enforcement of a promise that otherwise lacks the elements of a contract. *Id.* The Overmans did not file a counterclaim, and the Court does not read the Defendants' submissions to be asserting a promissory-estoppel cause of action, as they have not cited to any legal authority related to such a claim. The Court will proceed under the assumption that the Overmans are asserting equitable estoppel as a bar to the Plaintiff's claim that the Policy does not provide coverage.

were not a definitive statement about coverage and that he was probably taking a risk by not obtaining more coverage. That he chose not to purchase business insurance for the Day Care is not evidence that Hufford's statements prevented or hindered Randall from conducting further research and doing so.

Moreover, for purposes of this case, it is important to remember that the intent of estoppel "is to preserve rights previously acquired, and not to create new ones." *Pepkowski*, 535 N.E.2d at 1167 (quoting *State v. Mut. Life Ins. Co.*, 93 N.E.2d 213, 222 (Ind. 1910)). "Consequently, while an insurer's conduct can waive provisions of an existing policy, equitable estoppel cannot extend coverage that does not exist." *Little*, 783 N.E.2d at 316 (citing *Egnatz*, 581 N.E.2d at 441–42 (concluding that application of the doctrine of equitable estoppel was improper where it would require the insurer to provide a form of coverage to the insured that was not purchased under the policy)); *Travelers Ins. Co. v. Eviston*, 37 N.E.2d 310, 316 (Ind. Ct. App. 1941) ("[E]stoppel is not available to bring within the coverage of an insurance policy, risks that are not covered by its terms, or that are expressly excluded therefrom."). *See also Transcon. Ins. Co. v. J.L. Manta, Inc.*, 714 N.E.2d 1277, 1280–81 (Ind. Ct. App. 1999) ("Indiana has for many years adhered to the general rule that the doctrine[ ] of estoppel . . . [is] not available to create or extend the scope of coverage of an insurance contract [because] an insurance company should not be made to pay the loss for which it has not charged a premium.") (internal citations omitted).

One exception to the general rule against coverage by estoppel applies "when an insurer misrepresents the extent of coverage to an insured, thereby inducing the insured to purchase coverage which does not in fact cover the disputed risk." *French v. State Farm Fire & Cas. Co.*,

950 N.E.2d 303, 310 (Ind. Ct. App. 2011) (quoting *Emp'rs Ins. of Wausau v. Recticel Foam Corp.*, 716 N.E.2d 1015, 1028 (Ind. Ct. App. 1999)). The exception has been applied where refusing coverage would "sanction fraud or other injustice." *Manta*, 714 N.E.2d at 1281 (quoting *Nationwide Mutual Ins. Co. v. Filos*, 673 N.E.2d 1099, 1103 (Ill. App. Ct. 1996)). For example, the Indiana Supreme Court ruled that an insurer was estopped from denying coverage pursuant to a vacancy provision of an insurance contract where the insurance agent knew the insured's home was vacant at the time the coverage was purchased. *See Huff v. Travelers Indem. Co.*, 363 N.E.2d 985, 992 (Ind. 1977).

Here, the conversation Randall described is not sufficient to overcome the general rule that the doctrine of estoppel is not available to create or extend the scope of coverage of an insurance contract and require the insurance company to pay a loss for which it has not charged a premium. First, the statements were not about the terms of the Policy and its coverage, but about how the Plaintiff would handle a claim. Second, the conversation did not take place in connection with purchasing the Policy. Thus, the exception recognized in *Huff*—for inducing the purchase of inadequate coverage by misrepresenting the scope of coverage—does not apply.

Because the evidence presented by the Defendants would not permit a rational finder of fact to conclude that the elements of estoppel have been met, such that the Plaintiff may not enforce the terms of the Policy, the Court will enter declaratory judgment in favor of the Plaintiff.

## CONCLUSION

For the reasons stated above, the Court GRANTS Illinois Farmers' Motion for Summary

Judgment [ECF No. 18] and directs the Clerk to enter DECLARATORY JUDGMENT in favor of the Plaintiff declaring that:

1. There is no coverage for any liability for bodily injury or death that Eulonda LaGuire and/or Eulonda LaGuire d/b/a Lonie's Day Care may have arising out of the death of W.O.;

2. Illinois Farmers has no duty to defend Eulonda LaGuire and/or Eulonda LaGuire d/b/a Lonie's Day Care in any claim or lawsuit filed against her or the Day Care as a result of the death of W.O.; and

3. Illinois Farmers has no duty to indemnify Eulonda LaGuire and/or Eulonda LaGuire d/b/a Lonie's Day Care for any liability she may have for injury or death of W.O.

SO ORDERED on May 11, 2016.

                                            s/ Theresa L. Springmann
                                            THERESA L. SPRINGMANN
                                            UNITED STATES DISTRICT COURT
                                            FORT WAYNE DIVISION